UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MARLENE WILKES,

                            Plaintiff,                    **MEMORANDUM AND ORDER**
                                                                         CV 07-758 (ARL)

        -against-

SEARS HOLDING CORPORATION, STEVE
SUNDERLAND, VICE PRESIDENT OF STORES
NORTHEAST REGION,

                            Defendants.
----------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

       The plaintiff, Marlene Wilkes ("Wilkes"), filed this action in Kings County Supreme Court alleging that the defendants, Sears Holding Corporation ("Sears") and its Vice President of Stores for the Northeast Region, Steve Sunderland ("Sunderland"), had discriminated against her and created a harassing environment on the basis of her race, national origin and gender in violation of New York State Executive Law § 296. The plaintiff also asserted a claim for intentional infliction of emotional distress. In February 2007, the defendants filed a notice of removal contending that the district court had original jurisdiction by virtue of the diversity jurisdiction granted by 28 U.S.C. § 1332. The defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the defendants' motion is granted, in part.

## BACKGROUND

       The plaintiff, a black women born in Trinidad and Tobago, began working for Sears in January 1996. Defs. 56.1 Statement at ¶ 3; Pls. 56.1 Statement at 10.[1] In January 2003, the

---

[1] Summary judgment motions in this district are subject not only to the standards applicable to Rule 56(c) of the Federal Rules of Civil Procedure, but to the Local Rules for the

plaintiff was promoted to General Manager of the Sears located in Brooklyn, New York. Pls. 56.1 Statement at ¶ 11. In August 2004, the plaintiff was made the District Operations Manager in Hicksville. Pls. 56.1 Statement at ¶ 5. Less than one year later, she was promoted to Director of Stores of the Long Island District. Defs. 56.1 Statement at ¶ 3; Pls. 56.1 Statement at ¶ 4. The plaintiff continued working for Sears until January 15, 2006. Defs. 56.1 Statement at ¶ 17; Pls. 56.1 Statement at ¶4.

During the term of the plaintiff's employment, Sears stores in the United States were divided into eight regions, each containing approximately fourteen districts. Defs. 56.1 Statement at ¶ 2. Each district was comprised of seven stores and was headed by a Director of Stores responsible for the performance of stores within that district. *Id.* During the relevant time period, four of the directors were white females, eight were white males, but the plaintiff was the only black female. Pls. 56.1 Statement at 42.[2] Each Director of Stores reported to and was supervised by a Regional Vice President. Defs. 56.1 Statement at ¶ 2. The plaintiff reported to the defendant Sunderland. Defs. 56.1 Statement at ¶ 4.[3]

---

United States District Courts for the Southern and Eastern Districts as well. Local Civil Rule 56.1 requires that both the movant and the opponent on a summary judgment motion submit statements of the material facts as to which they contend there are or are not genuine issues to be tried. Loc. Civ. R. 56.1(a) & (b). The rule also provides that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party." Loc. Civ. R. 56.1(c). Although the plaintiff did submit a 56.1 statement, the statement does not correspond to the facts set forth in the defendants' 56.1 statement making it more difficult for the court determine which facts are in dispute. Nonetheless, the court has overlooked this technical defect and, to the extent possible, has cited only to those facts in the parties' 56.1 statements that the court believes are not controverted.

[2] The plaintiff has only identified the race and gender of thirteen directors.

[3] For a short time, Wilkes initially reported to Bill Collett, who then retired. Defs. 56.1 Statement at ¶ 3.

As Regional Vice President, Sunderland was responsible for the sales, revenues, profit, customer service and store experience for each of the stores located within his district. Defs. 56.1 Statement at ¶ 5. In order to satisfy these requirements, Sunderland had the authority to give his directors instructions on how to manage their district and to set the results he expected. Defs. 56.1 Statement at ¶ 5. In August 2005, consistent with this authority, Sunderland advised Wilkes that her district was not delivering the type of results he expected and suggested firing four of her seven store managers, including the black female manager of the Garden City store. Defs. 56.1 Statement at ¶ 7; Pls. 56.1 Statement at ¶¶ 13, 14. Wilkes rejected this suggestion despite the fact that her district was the worst performing district in the region.[4] Defs. 56.1 Statement at ¶¶ 7-9; Pls. 56.1 Statement at ¶ 14.

In October 2005, Sunderland met with Wilkes and once again expressed dissatisfaction with her performance. Defs. 56.1 Statement at ¶ 10; Pls. 56.1 Statement at ¶ 22. In an effort to improve her performance, Sunderland gave Wilkes a Performance Plan for Improvement, which identified the problems in her district and set forth goals for her to meet. Savage Decl. at Ex. F. In December 2005, Sunderland met with Wilkes for a third time, but this time he expressed the view that Wilkes was not going to be able to change the performance in her district and asked her to consider an alternative position with the company. Defs. 56.1 Statement at ¶ 11; Pls. 56.1 Statement at ¶ 22. Specifically, Sunderland offered Wilkes a position as the District Manager of the seven Sears hardware stores. Defs. 56.1 Statement at ¶ 11. The parties dispute whether she

---

[4] Sears uses a program to measure store performance and generates what is know as the "Balanced Scorecard." The Balanced Scorecard covering the period from February 2005 to January 2006 reflects that Wilkes' district was the worst performing district in the Unites States. Defs. 56.1 Statement at ¶ 7; Savage Decl., Ex. D.

3

was offered the position without a reduction in pay. Defs. 56.1 Statement at ¶ 11; Pls. 56.1 Statement at ¶ 25. However, without reference to the pay, Wilkes nonetheless rejected the offer because she believed that her performance issues "would follow her" and she would be let go if she were unable to improve the hardware stores within thirty days. Defs. 56.1 Statement at ¶ 11; Pls. 56.1 Statement at ¶¶ 26, 40.

Instead, Wilkes requested a transfer to the Rego Park store, one of the largest stores in the organization, as its Store Manager. Defs. 56.1 Statement at ¶ 12. According to Wilkes, Sunderland indicated he would get back to her about Rego Park, but he still offered her two months of severance pay at that meeting. Pls. 56.1 Statement at ¶ 24. Sunderland contends that at the time Wilkes requested the transfer to Rego Park, he had already offered the job to Karen Brown, a Store Manager in California. Defs. 56.1 Statement at ¶ 13. Sunderland further contends that Rego Park was used by Sears as a place to develop potential future leaders in the company and, thus, was not an appropriate location to transfer Wilkes. Defs. 56.1 Statement at ¶¶ 12, 13, 16.[5]

After Wilkes' transfer request was rejected, Wilkes began to discuss the terms of a separation agreement with two Sears representatives. Defs. 56.1 Statement at ¶ 17. On January 18, 2006, Wilkes accepted the terms of the separation agreement which included four months of pay. *Id.*; Savage Decl. at G. However, six days later, Wilkes revoked her acceptance. Defs. 56.1 Statement at ¶ 17; Pls. 56.1 Statement at ¶ 29.

Wilkes contends that she decided not to sign the separation agreement because she knew she had been discriminated against. Pls. 56.1 Statement at ¶¶ 29-30. Wilkes argues that as soon

---

[5] Karen Brown ultimately took over as the Director of Stores for the Long Island District.

4

as Sunderland became her supervisor he criticized her performance, although no one had complained about her for almost ten years. Pls. 56.1 Statement at ¶¶ 15, 46, 47, 50. Wilkes contends that his criticism of her was based on her race, gender and national origin. Pls. 56.1 Statement at ¶ 15. Wilkes contends that Sunderland was unfairly critical, unpleasant and negative about several minority employees in the district. Pls. 56.1 Statement at ¶ 15. Wilkes notes, for example, that a black female manger was slated for termination in her district but a male manager with similar performance issues was not terminated. *Id.* Wilkes also notes that Sunderland criticized and marked several minorities for termination outside of her district, specifically in the Rego Park, Brooklyn and Queens Plaza stores. Pls. 56.1 Statement at ¶ 18. Finally, Wilkes claims that when Sunderland visited her stores he was always unpleasant, but that he was encouraging when he visited the Albany and New Brunswick stores because they were managed by white men. Pls. 56.1 Statement at ¶ 16.

Wilkes contends that as a result of this discrimination she was the only director to be fired, although eleven of Sunderland's fourteen districts had unsatisfactory performance ratings. Pls. 56.1 Statement at ¶¶ 57-58. Wilkes notes that Sunderland allowed the Staten Island director to continue despite his district's poor merchandising presentation standards. Pls. 56.1 Statement at ¶ 20. Finally, Wilkes contends that Sunderland even discriminated against her when she requested a transfer in lieu of the hardware store position. Wilkes points out that Sunderland permitted Donald Graham, a Director who had performance issues to transfer to a Connecticut store as its manager although her request for a transfer to Rego Park was denied.[6] Pls. 56.1 Statement at ¶31.

---

[6] Wilkes also identifies two women that left Sears before being fired, but their position with the company was not mentioned. *See* Pls. 56.1 Statement at ¶ 35.

The defendants deny that they discriminated against Wilkes or that they created a harassing environment. The defendants contend that they had to fire Wilkes because she managed the worst performing district in the United States, disagreed with Sunderland's management style and refused to follow his instructions. Defs. Mem. at 2-3. They argue that Wilkes has presented no evidence to support her claims of discrimination and that, although she may have believed that she had been discriminated against, she failed to avail herself of Sear's anti-discrimination policy, which warrants dismissal of the complaint. *Id.*

## DISCUSSION

### A. Summary Judgment Standards

"'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.'" *Jamaica Ash & Rubbish Removal Co. v. Ferguson,* 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) (quoting *In re Blackwood Assocs., L.L.P.*, 153 F.3d 61, 67 (2d Cir. 1998) and citing FED. R. CIV. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996), *cert denied,* 520 US 1228 (1997).

The trial court's responsibility is "'limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.'" *B.F. Goodrich v. Betkoski,* 99 F.3d 505,

522 (2d Cir. 1996) (quoting *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994)). When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Rather, there must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim." *Jamaica Ash & Rubbish*, 85 F. Supp. 2d at 180 (quoting *Celotex,* 477 U.S. at 322). A moving party may obtain summary judgment by demonstrating that little or no evidence may be found in support of the non-moving party's case. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Marks v. New York Univ.*, 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999).

"The Second Circuit has provided additional guidance regarding summary judgment motion in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits an depositions. Nonetheless, 'summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues if material fact.'"

*Pender v. State of N.Y. Office of Mental Retardation & Devel. Disabilities,* 2006 U.S. Dist. LEXIS 48751 *10 (E.D.N.Y. July 18, 2006) (citing *Schiano v. Quality Payrol Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (internal citations omitted). With these standards in mind, the court addresses the plaintiff's claims.

**B. Wilkes' Discrimination Claim Based on Race, Gender and National Origin.**

Wilkes claims that she was discriminated against on the basis of her race, gender and

national origin in violation New York State Executive Law § 296, which provides:

> It shall be an unlawful discriminatory practice:
>
> a) For an employer or licensing agency, because of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

"Consideration of claims brought under New York State . . . Human Rights Law parallels the *McDonnell Douglas* framework applied to Title VII cases." *Hansberry v. Father Flanagan's Boys' Home*, 2004 U.S. Dist LEXIS 26937 * 11 (E.D.N.Y Nov. 2, 2004) (citing *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 565 n.1 (2d Cir. 2000)). Accordingly, the court relies on cases brought under both the state and federal law in reaching its conclusions. Moreover, the plaintiff has relied on the identical facts in support of her claims based on gender, race and national origin, and thus, the claims will be addressed together.

"The burden-shifting test articulated by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973), provides the elements of the plaintiff's prima facie case of discrimination . . . ." *Hansberry,* 2004 U.S. Dist LEXIS at *11. To establish a prima facie case of discrimination, Wilkes must demonstrate that: "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she suffered an adverse employment action[7]; and (4) the circumstances surrounding the action permit an inference of discrimination. *See Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d

---

[7]The defendants argue in a footnote that Wilkes' termination does not amount to an adverse employment action because she was offered another job. The parties dispute whether the job Wilkes was offered had comparable pay, and thus, cannot be the basis of the court's determination.

Cir. 2004) (citing *McDonnell Douglas Corp.,* 411 U.S. at 802). Although the burden of proving the prima facie case is *de minimus*, the claim fails if the plaintiff cannot make out a prima facie case of discrimination. *Id.* Once this *de minimus* burden has been met, the defendant must "'articulate some legitimate, nondiscriminatory reason for the' termination. If the defendant carries that burden, 'the burden shifts back to the plaintiff to demonstrate by competent evidence that 'the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Pender*, 2006 U.S. Dist. LEXIS at *12-13 (internal citations omitted).

In the instant case, Wilkes acknowledges that Sunderland never made invidious comments about race, national origin or gender to her or any other employee at Sears. Pls. Dep. at 57. She argues, nonetheless, that after working for almost ten years without complaint, and having received numerous promotions, she was fired within months of Sunderland's appointment. Wilkes concluded, therefore, that despite the lack of invidious comments, Sunderland's criticism was based on her race, gender, and national origin.

Wilkes may rely on circumstantial evidence to establish her *prima facie* case including, but not limited to, the following:

> the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in ethically degrading terms; or its invidious comments about others in the employee's protected group; or more favorable treatment of employees not in th protected group; or the sequence of events leading to the plaintiff's discharge.

*Hansberry,* 2004 U.S. Dist LEXIS at * 13 (citing *Abdu-Brisson v. Delta Air Lines, Inc.* 239 F.3d 456, 468 (2d Cir. 2001)). Here, the plaintiff has satisfied the minimal burden required to make out a prima facie case with respect to her claims based on race and gender. Wilkes argues, among other things, that Sunderland was unfairly critical and fired many minority employees in

9

the district; that Sunderland slated a black manager for termination but did not do so with a male manager in the same failing district; that Sunderland was unpleasant when he visited her stores, but that he was encouraging when he visited stores managed by white men; and that she was the only director to be fired although eleven out of fourteen districts were failing. Pls. 56.1 Statement at ¶¶ 15, 16, 18, 57-58.

Wilkes has not, however, offered a shred of evidence, direct or circumstantial, to suggest that the decision to fire her was based on the fact that she was born in Trinidad and Tobago. Her entire national origin claim stems from the fact that she was the only director from Trinidad and Tobago. This fact alone is insufficient to even satisfy the minimal burden necessary to establish a *prima facie* case of discrimination. *See Davis v. Oyster Bay-East Norwich Cent. Sch. Dist.*, 2006 U.S. Dist. LEXIS 82914 *33 (E.D.N.Y. Mar. 9, 2006), *aff'd* 2007 U.S. App. LEXIS 7352 (2d Cir. 2007). Accordingly, the plaintiff claims based on national origin are dismissed.

Narrowing the balance of this analysis to her claims based on race and gender, the court finds that the defendants have offered a legitimate non-discriminatory reason for Wilkes' termination. According to the defendants, the Long Island District was the worst performing district in the region and Wilkes was terminated, they argue, because, despite counseling, she could not meet Sunderland's performance expectations. *See* Sunderland Decl. at ¶ 9. Thus, to defeat summary judgment, Wilkes must present evidence sufficient to permit a finder of fact to infer that Sunderland's employment decision was more likely than not based in whole or in part on race or gender discrimination. *See Terry v. Ashcroft,* 336 F.3d 128, 138 (2d Cir. 2003) (citing *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)).

To meet this burden, Wilkes may rely on the same evidence she offered in support of her *prima facie* case as long as she provides some additional direct or circumstantial evidence of

discrimination that would lead a trier of fact to believe that the defendants' explanation for her termination is false. *See Pender,* 2006 U.S. Dist. LEXIS at *13 (citing *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)). The ultimate question is whether Wilkes "has presented sufficient evidence from which a reasonable jury could find race [or gender] discrimination by examining each parties' evidence individually and then proceeding to evaluate the evidence as a whole." *Id.* at *15. Although the evidence is thin, the court believes that Wilkes has done so.

As previously stated, Wilkes argues that the following actions taken by Sunderland suggest a discriminatory motive: (1) Sunderland was unfairly critical and fired many minority employees within the district; (2) Sunderland slated the Black female manager from Garden City store for termination but did not slate the male manager of the East Northport store for termination; (3) Sunderland was unpleasant when he visited her stores, but that he was encouraging when he visited stores in the district managed by white men; (4) seemingly more women than men in the district left Sears before they were fired; and (5) she was the only director to be fired although eleven out of fourteen districts were failing. Pls. 56.1 Statement at ¶¶ 15, 16, 18, 57-58; Wilkes Aff. at ¶3. In addition, Wilkes argues that she was considered an outstanding employee, as evidenced by her promotions, until Sunderland came on the scene, singled her out, and fired her. Pls. 56.1 Statement at ¶ 50; Pls. Mem at 13. Finally, Wilkes also notes that she was replaced by a white man. Wilkes Aff. at ¶9.

The defendants characterize this evidence of discriminatory conduct as nothing more than Wilkes' disagreement with Sunderland's business decisions and with his perception of her job performance. They argue, in this regard, that neither the plaintiff's perception of her own job performance or belief that her supervisor was mishandling the district supports a claim of pretext. See *Davis v. Oyster Bay-East Norwich Cent. Sch. Dist.*, 2006 U.S. Dist. LEXIS 82914 (E.D.N.Y.

11

Mar. 9, 2006)(change in managements' evaluation of performanace cannot itself raise inference of pretext); *Osrick v. American Inst. of Aero & Astronautics*, 938 F. Supp. 185, 191 (S.D.N.Y. 1996)(difference in new manager's expectations insufficient to support pretext); *Brown v. Time, Inc.*, 1997 U.S. Dist LEXIS 6227 *38 (S.D.N.Y. 1997). The flaw in this argument is that in order to rely on the defendants' characterization of the plaintiff's performance or, for that matter, either parties characterization of the events leading up to her termination, the court, in this caase, would be required to evaluate the parties' credibility given the plaintiff's other allegations. The court must "[credit] all inferences, including those related to credibility" in favor of Wilkes. *Petrosino v. Bell Atl.*, 385 F.3d 210 (2d Cir. 2004). Accordingly, Wilkes has presented sufficient evidence to preclude summary judgment on her race and gender claims.

**C. Wilkes' Hostile Work Environment Claim.**

Wilkes has also asserted a hostile work environment/harassment claim the pursuant to the New York State Human Rights Law. As was the case with race and gender discrimination claims, hostile work environment claims brought under brought under the Human Rights Law are analyzed identically to claims under Title VII and, thus, the court has relied on cases brought under Title VII in reaching its conclusions. *See Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 317 n.1 (2d Cir. 1999). In addition, since the same standards apply to hostile work environment claims based on race, gender or national origin, the claims have been addressed together. *See Richardson v. NYS Dep't of Corr. Servs.,* 180 F.3d 426, 436 n.2 (2d Cir. 1999).

In order to survive the motion for summary judgment on her claim of hostile work environment, Wilkes must show that her workplace was "permeated with 'discriminatory intimidation, ridicule, and insult,' that [was] 'sufficiently severe or pervasive to alter the conditions of [her] employment." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 1990)

(citing *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 21 (1993). In assessing the overall hostility of the workplace, charges of discrimination must be "considered cumulatively in order to obtain a realistic view of the work environment." *Schwapp v. Town of Avon*, 118 F.3d 106, 110-11 (2d Cir. 1997). "The incidents comprising a hostile work environment need not make any reference to the trait or condition on the basis of which the discrimination has occurred, so long as the incidents can reasonably be interpreted as having taken place on the basis of that trait or condition." *Gregory v. Daly*, 243 F.3d 687, 695 (2d Cir. 2001). Guided by these principles, the court finds that the incidents Wilkes alleged were not sufficiently severe or pervasive that a reasonable jury could conclude created a hostile work environment.

Wilkes offers the same evidence in support of her hostile work environment claim that she offered in support of her race and gender discrimination claim. Wilkes argues that from the moment Sunderland became her supervisor "life became intolerable and infinitely troublesome." Pls. Mem. at 18. Specifically, Wilkes states that Sunderland singled her out and was unfairly critical of her district's performance despite the fact that ten other districts were also performing below acceptable standards. In support of this claim, however, Wilkes only points to three separate incidents when she was intolerably criticized, those incidents occurring at meetings held in August, October and December 2005.[8] Read in the broadest possible fashion, the evidence suggests that during each of these meetings, Sunderland expressed dissatisfaction with Wilkes' performance and criticized the overall performance of her district. Pls. Rule 56.1 Statement at ¶¶ 12-16, 22-23. Even if Wilkes can show that Sunderland was unfairly critical of her performance because she was a black women, the specific incidents were insufficiently severe or pervasive to

---

[8]Sunderland visited Wilkes other occasions between March and August 2005, but the only information Wilkes offers about these other visits is that they were not pleasant.

create a hostile work environment. *See Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 58-59 (2d Cir. 2004) (two quid pro quo request for sex and one write up not sufficiently severe to create work environment).[9] Accordingly, the defendants motion seeking to dismiss the hostile work environment claim is granted.

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment is granted in part as follows:

1. The defendants' motion to dismiss the plaintiff's discrimination claim based on national origin is granted;

2. The defendants' motion to dismiss the plaintiff's discrimination claim based on race and gender is denied; and

3. The defendants' motion to dismiss the plaintiff's hostile work environment claim is granted.

The defendants' motion does not address the plaintiff's intentional infliction of emotional distress claim. Accordingly, while the defendants' requested that the court dismiss the plaintiff's case in its entirety, the emotional distress claim could not be resolved by the instant motion and remains viable.

A telephone conference will be held on October 3, 2008 at 11:00 a.m. to schedule a trial on the remaining claims. Counsel for the plaintiff is directed to initiate the call to (631)712-5730.

Dated: Central Islip, New York  **SO ORDERED:**
      September 22, 2008  _____/s/_____
                                              Arlene Rosario Lindsay
                                              United States Magistrate Judge

---

[9] Given this determination, the court need not address the *Faragher/Ellerth* defense argued by the defendants in connection with the plaintiff's hostile work environment claim.